## JOHN ANNAN

*v.*

## THE HILL UNION BREWERY COMPANY.

[Submitted January 27th, 1900. Decided May 10th, 1900.
Filed May 12th, 1900.]

1. Where by-laws endorsed on a fire policy issued by a mutual company, and made a part of the contract, provide "that a full statement of losses assessed for will be sent with each assessment," a receiver of the company cannot collect an assessment directed to be levied by the court to pay losses, unless he sends a statement of such losses, with a notice of the assessment.

2. A fire policy issued by a mutual company provided that the by-laws appearing on the back thereof should form a part of the contract, and be binding on the holder in the same manner as though they appeared on the face of the policy. One of them authorized the board of directors to change the by-laws at any time, but there was no agreement on the part of the assured that the by-laws so changed should, *ipso facto*, become a part of the contract.—*Held*, that the rights of a policyholder were governed by the by-laws as they appeared on his policy, and not as subsequently changed by the board of directors.

3. An agent authorized to insure property of his principal has no authority to insure in a mutual company since he will thereby make the owner an insurer of others.

4. A decree directed a receiver of a mutual company to levy and collect an assessment on outstanding policies "in force on the date of the respective losses." It contained a schedule of "the total insurance in force, and policies liable to pay losses," and provided that it should "not be construed to prevent any member from setting up defences he might have to the collection of the same."—*Held*, that the decree was not conclusive on the question as to what policies were subject to assessment.

On petition, answer and proofs.

*Mr. Edward A. Day*, for the receiver of the People's Mutual Live Stock Insurance Company.

*Mr. Thomas H. McCarter, Jr.*, for the receiver of the Hill Union Brewery Company.

STEVENS, V. C.

This is an appeal from the determination of the receiver of the brewery company rejecting the claim of the receiver of the People's Mutual Live Stock Insurance Company.

The receiver of the live stock company claims that a valid assessment against the brewery company, amounting to $2,235.34, has been made either by himself or by the court of common pleas of Dauphin county, Pennsylvania. The facts, so far as it is necessary to state them, are these:

The live stock company carried on the business of insuring horses and mules. On May 2d, 1898, it was adjudged by the common pleas of Dauphin county to be insolvent. On May 18th, 1898, Frank B. Stockley was appointed receiver. On September 13th, 1898, it was decreed

"That Frank B. Stockley, receiver of the within named corporation, be and is hereby authorized to levy and collect an assessment and assessments upon the outstanding policies of the company, in force on the dates of the respective losses according to the following schedule"

Then follows a schedule showing the date of each loss, the number of the policy in respect of which the loss occurred, the amount of insurance, the "total insurance in force and policies liable to pay the said loss" and the "*pro rata* assessment, covering liabilities, allowance for insolvency of policyholders and expenses of collection and receivership."

In his petition, praying the court to make an assessment, the receiver states the total liabilities, exclusive of the expenses of the receivership, at $18,767.54, and he avers that in view of the possibility that some of the assessments may be uncollectible, it is necessary to levy an assessment of $76,000 on all its policies for the purpose of paying its debts. This levy the court authorized.

Although the decree in terms authorizes the *receiver* to make the assessment, he appears to have regarded this decree as in itself an assessment; for on November 5th, 1898, he sent the following notice to Hill's Union Brewery Company, Limited:

"Sir—You are hereby notified that on September 13th, 1898, the court of common pleas of Dauphin Co. made an assessment against you amounting to $2,235.34 for your proportion of the unpaid liabilities of the People's Mutual Live Stock Insurance Co., of Pennsylvania, incurred while you were a member thereof and while your insurance was in force. In pursuance of that decree you are requested to pay said amount to the receiver within thirty days from this date.

"FRANK B. STOCKLEY,
"Receiver."

The amount, $2,235.34, is the aggregate sum assessed or alleged to have been assessed upon forty-four policies held or alleged to have been held by the brewery company.

Many objections were urged against the collection of this assessment. I shall mention only two.

(1) Thirty of the policies now said to be included in the assessment were issued on August 10th, 1895. One of their conditions is " (4) that the holder of this policy agrees to pay any assessment that may be levied upon him or her from time to time as provided in the by-laws of this company."

Article 4, section 3, of the by-laws, which are endorsed upon the policy and made part of the contract, reads thus :

"The losses of this Co. are paid by assessments levied upon the members or policyholders, which will be made in exact proportion to the losses sustained. A full statement of the losses assessed for will be sent with each assessment."

It is conceded that the only notice sent by the receiver was the one whose contents I have stated. This did not contain any statement of the losses assessed for. In *Northampton Mutual Live Stock Insurance Co.* v. *Stewart, 10 Vr. 486,* the policy provided that the tax (*i. e.,* assessment) levied should be published in two newspapers and paid within sixty days from the day of publication. It was held by the court of errors that although the personal notice given in that case would apprise the assured of the fact of the levy better than the public notice, yet he could not be held liable until such public notice was given, for the reason that "it could be no injustice to the plaintiff to hold it bound to the observance of rules which, of its own volition, it had enacted for its guidance in dealing with its members." The

Annan *v.* Hill Union Brewery Co.

same reason applies to the case at bar and with greater force. At least forty-nine policies had been issued to the brewery company between August 10th, 1895, and May 2d, 1898. The insurance in the case of six of them had been transferred from horses that had been sold to other horses. Six new policies had been issued pursuant to article 6 of the by-laws and the six old ones canceled. But notwithstanding this cancellation, and notwithstanding the fact that all assessments levied prior to the sale of the animals had been paid, the receiver assessed the canceled policies not only for losses unpaid prior to the sale of the animals insured, but also for the expenses of the receivership. This he did apparently on the idea that all canceled policies were liable for unpaid losses occurring prior to cancellation. In *Doane* v. *Millville Insurance Co., 18 Stew. Eq. 274,* it was held that surrendered notes were liable for unpaid losses occurring prior to the time of their unauthorized surrender by the secretary, but this was put expressly upon the ground that one of the by-laws, part of the contract, so provided. One of the conditions of the policies in question is

"7. This policy shall be in force only so long as the insured animal remains in the possession of the insured. The holder * * * must immediately notify the company of the sale of any animal insured, and surrender the policy for cancellation, and the party to whom this policy is issued shall be liable for all assessments *levied prior* to the sale of the animal."

A part of condition 8 reads: "All assessments due at the time of cancellation may be collected by law." It is quite plain that if the contract is to govern, the assured completely performed his part of it when he paid all assessments levied prior to the sale. This the brewery company did. The assessments had been regularly levied at stated intervals. I know of no principle on which the liability can or should be extended beyond the contract. The liability of the policyholders of this company is unusually great. It does not appear to have been limited by anything short of payment of all losses and expenses. No premium note was given, and there is no provision restricting it to the value of the thing insured.

If the notice which the receiver sent had contained a statement of the losses the assured would have seen at once that the receiver was assessing him for more than his contracts warranted. The right to have the statement was therefore valuable. I do not see why the company should not be entitled to insist upon the performance of so reasonable a stipulation.

The receiver stands in the shoes of the company. *Meley* v. *Whitaker, 22 Vr. 602.* If the company must have given notice in the manner prescribed, so must the receiver.

It is said, however, that the original by-laws provided for their amendment or repeal, and that after the contract was entered into, the by-laws were revised and the clause in question modified by section 1, of article 6, which provides that

"Whenever an assessment is levied, a written or printed notice shall be mailed to each member, directed to his or her post-office address as it appears on the books of the company, stating the amount of the said assessment and giving thirty days in which to pay the same."

Now, in the first place, the notice is not a compliance with this by-law. It does not correctly state the amount of the assessment, but, as I have shown, an amount considerably in excess of what the receiver could lawfully levy. In the second place, condition 15 of the policy reads thus:

"This policy of insurance is delivered upon the condition and agreement that the by-laws *appearing upon the back of the same* shall form a part of it and shall be binding upon the holder in the same manner and form as though they appeared upon the face of this policy."

It is true that by article 11 it is provided that " these by-laws may be amended, changed, altered or repealed at any time by the consent of a majority of the board of directors." But it is one thing for a member to agree, generally, that the by-laws may be changed by his agents, the directors, and quite another for him to agree that the by-laws so changed shall, *ipso facto,* become part of his already-completed contract. The court leans against giving by-laws a retrospective effect. *Roxbury Lodge* v. *Hocking, 38 Atl. Rep. 693.* Otherwise the contract would be

anything the directors might, from time to time, choose to make it. The meeting of minds, so necessary to the conception of a contract, would be purely notional. In the case at bar, however, it seems to me that we have a clear intimation, in the language of the condition itself, that the by-laws which go to make up the contract are those then in force as they appear upon the back of the policy.

(2) Hill's Union Brewery Company, Limited, is an English corporation. Its directors meet in London. For the more convenient transaction of business they, by deed, on October 17th, 1893, appointed Hamilton Fish Kean, of 33 Wall street, New York, to be the attorney of the company. They vested him with every power necessary or convenient for the transaction of the company's business, carried on at Newark. After his appointment he exercised a general supervision over it, but retained Arthur De Gruchy as local manager. Mr. De Gruchy, he says, attended to all the local business—to the direct workings of the brewery. He authorized him, he says further, to insure against loss by fire, but did not authorize him to insure live stock. He knew that the live stock had been insured by De Gruchy, but did not know that it had been insured in a mutual company. The question is whether De Gruchy had authority to insure in *such* a company, or if not. whether his action was afterwards ratified.

In *White* v. *Madison, 26 N. Y. 122*, it was held that while a deputy sheriff had general authority to insure on behalf of his principal, the sheriff, he was not authorized to insure in a mutual company, for he would thereby make his principal an insurer of others. This decision is cited with approval in the latest text-books (*1 May Ins.* § *124; 1 Bidd. Ins.* § *613*), and I do not find that it has been questioned. It seems to be sound in principle and directly applicable to the present case. The liability was, in the case cited, limited to the amount of the premium note, but in the case at bar there is, as I have said, no limit to it except the amount of the company's indebtedness. If the brewery company were the only solvent member, it might be assessed for the entire amount which the live stock company

now owes. On the authority of *White* v. *Madison,* I think that Mr. De Gruchy had no authority to insure in this way. *Joyce Ins.* § *609.*

The more difficult question is whether De Gruchy's action in this respect was ratified. It is not pretended that it was ratified by the company itself, but it is said that it was by Mr. Kean. The acts relied on are (1) the knowledge of Mr. Kean that the horses were insured ; (2) the fact that quarterly statements were made to him, which, it is said, must have included the premiums paid to the live stock company and money received for three losses ; (3) the countersigning by Mr. Kean of fourteen checks made payable to the order of the " People's Mutual Live Stock Insurance Company, of Pennsylvania." None of these circumstances appear to me to warrant the inference of a ratification. It is true that Mr. Kean knew that the horses had been insured, but he did not know (and this is the controlling fact) that they had been insured in a *mutual* company. He says further that he did not examine the books himself, and that the quarterly statements furnished to him by an expert accountant did not disclose the fact of insurance in this company. As to the checks, he says that he would sign them sometimes in blank and sometimes after they were filled in, but that he never remembers to have seen the name of the *People's Mutual Company* on them. The burden of proving ratification is on the appellant, and the person ratifying must have full knowledge of his rights and of all the material facts. *Owings* v. *Hull, 9 Pet. 607; Titus & Scudder* v. *Cairo and F. Railroad Co., 17 Vr. 393, 420.* It would be difficult to affirm that the evidence brings Mr. Kean within the operation of this rule. Whether the receiver may not have the right to recover back the money paid for losses, is a different question. *Titus & Scudder* v. *Cairo and F. Railroad Co., supra; Stokes* v. *New Jersey Pottery Co., 17 Vr. 238.*

It is insisted, however, that if there was neither original authority to insure nor ratification, still authority in De Gruchy to represent the corporation might be implied from the manner in which he had been permitted to transact the business. Usual employment is evidence of the powers of an agent, and the prin-

cipal will be held responsible for his acts done within the apparent authority conferred. *Fifth Ward Saving Bank* v. *First National Bank, 19 Vr. 527.* The rationale of this rule is that the agency arises from the assent of the directors, which assent is inferred from their acquiescence in permitting the agent to exercise the power assumed. *Stokes* v. *Pottery Co., 17 Vr. 242.*

In the case at bar it was not shown that the agent had ever before insured in a mutual company, and so the instances from which such apparent authority is to be deduced are those which refer to the live stock company alone. Were these of such a character as to warrant the deduction? Thirty-four policies were taken out on August 10th, 1895; one on December 5th, 1895; one on June 12th, 1896; two on June 18th, 1896; three on July 1st, 1896; five on November 22d, 1897, these being substituted for five of the policies issued on August 10th, 1895, and two on March 21st, 1898. Considering that the company was an English corporation with English directors, and considering further, the nature of the supervision and control exercised by Mr. Kean, it seems to me unreasonable to presume, contrary to the sworn fact, that the directors assented to this kind of insurance.

*Blake* v. *Domestic Insurance Co., 38 Atl. Rep. 242,* was also relied upon. It was argued that if the directors or Mr. Kean did not know of the acts of De Gruchy they ought to have known of them, and by the exercise of a moderate degree of diligence might have known of them.

In that case the endorsements of the treasurer were very numerous and effected a considerable number of persons, and the directors were plainly negligent or inattentive to what was going on. Here the instances are few and concern only the appellant. It is difficult, in view of the situation, to impute negligence. I think, therefore, that the policies are not binding.

It was argued that the decree directing the assessment was conclusive. But this decree itself provides that it "shall not be construed to prevent any individual member from setting up any defence he may have to the collection of the same." It is evident, therefore, that the question, in its general form, does

not arise, for the defences mentioned are plainly peculiar to the brewery company.

It may be added that there is considerable ambiguity about the language of the decree. It is not, in terms at least, in itself an assessment, although the receiver in the notice which he gave, in the case in hand, says that it is. It is apparently a direction to the receiver to make an assessment upon all policies between certain members. It does indeed first adjudge that the receiver shall levy and collect an assessment upon the policies " in force on the dates of the respective losses ; " but then, in the table, it uses the following language: " Total insurance in force and policies liable to pay said loss. Nos. 46,926 to 55,180 incl.," &c. The receiver himself in his evidence repudiates the view that *all* policies between the members indicated are to be assessed. The decree, therefore, if his construction of it be correct, leaves open to him the determination of the question what policies are subject to assessment, and there is no judicial determination on the subject.

I think the petition of appeal should be dismissed.